THOMAS ET AL. *v.* BOARD OF COUNTY
COMMISSIONERS OF PRINCE
GEORGE'S COUNTY ET AL.

[No. 17, October Term, 1952.]

*Decided November 7, 1952.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Louis B. Arnold,* with whom were *Julian H. Reis* and *Robert A. Diemer* on the brief, for the appellants.

*Vance V. Vaughan* and *James F. Couch, Jr.*, with whom were *Vaughan, Couch & Blackwell* on the brief, for the appellees.

MARKELL, C. J., delivered the opinion of the Court.

This is an appeal from a judgment on demurrer to the declaration in an action by husband and wife for injuries sustained by the wife, while a paying patient in the Prince George's General Hospital, through alleged negligence of an anaesthetist employed by the hospital. The demurrer of the county commissioners was sustained on the ground that in operating the hospital the county commissioners were performing a governmental function and are not liable for negligence in so doing. The result reached by the lower court is the same as that reached by this court, on different but related grounds, in cases of actions for negligence against charitable corporations. *Howard v. South Baltimore General Hospital*, 191 Md. 617, 62 A. 2d 574; *Loeffler v. Trustees of Sheppard-Pratt Hospital*, 130 Md. 265, 272-273, 100 A. 301, L. R. A. 1917D, 967.

By Chapter 918 of the Acts of 1941 the county commissioners of Prince George's County were authorized to issue bonds to the amount of $400,000 for the purpose of the acquisition of land, the construction of, and the purchase of equipment for, a hospital in that county, and to operate the same. The county commissioners were authorized to accept and receive grants or funds from the United States Government or the State or any instrumentality of either, and to accept bequests, gifts and devises and use them or the proceeds for the maintenance and operation of the hospital, and in the operation of the hospital "to make such charges for services furnished as in their judgment are necessary and proper." By Chapter 429 of the Acts of 1947 the county commissioners were authorized to issue bonds to the amount of $800,000 for the purpose of constructing and equipping an addition or additions to the hospital. Chapter 430 of the Acts of 1947 made a slight verbal

amendment in the Act of 1941. The alleged negligence for which plaintiffs make claim occurred in November, 1950. The 1950 Budget Act (Chapter 7, Acts of 1950) contained, among appropriations to "State Aided Institutions * * * General Hospitals, Counties:" an item "Prince George's General Hospital $18,509;" and in the Supplemental Budget, an item of $6,491; similar items were contained in the 1951 Budget Act (Chapter 296, Acts of 1951) $13,240, and in the 1952 Budget Act (Chapter 15, Acts of 1952) $27,385. Plaintiffs complain that the lower court took judicial notice of alleged facts which should be averred and proved. Regarding these complaints we shall say only that we find nothing in the statutes under which the Prince George's General Hospital was constructed and is operated, or in the State grants of aid, which authorizes the county to operate, and we shall not assume in the absence of explicit averment to that effect, that it has operated, the hospital as a proprietary institution for profit, *e.g.*, for paying patients only.

At the oral argument and in the briefs in the instant case counsel have cited many conflicting decisions in other states on the difference between governmental and proprietary functions of municipal corporations, counties and other public agencies, as affecting the question of liability for negligence in a case such as this. In a recent case the Supreme Court of Florida not only held the hospital liable to a paying patient for negligence, but held unconstitutional (on grounds not altogether clear) a statutory provision exempting the corporation from such liability. *Suwannee County Hospital Corporation v. Golden*, 56 So. 2d 911. Plaintiffs earnestly contend that the numerical weight of authority (as to liability) is in accord with this *Florida* case. We think the balance is in the opposite direction, especially in jurisdictions which are in accord with the decisions of this court regarding charitable corporations. In some (not all) jurisdictions where the courts are in accord with the Florida case the Maryland doctrine as

to charitable corporations has been rejected; the converse is also true. *City of Shawnee v. Roush,* 101 Okla. 60, 223 P. 354; *Borwege v. City of Owatonna,* 190 Minn. 394, 395, 251 N. W. 915. It would serve no useful purpose to count noses or weigh reasoning in other jurisdictions. The decisions of this court during the last twenty years foreclose the question in this court.

In *Cox v. Anne Arundel County,* 181 Md. 428, 431, 433, 31 A. 2d 179, 181, the county was held not liable, to a child attacked and bitten by a pack of ferocious dogs running at large, for negligence in not abating, by enforcing the local dog law, the nuisance caused by the pack of dogs running at large. The statute provided for license fees to be used (in part) for the payment of damages caused by dogs to livestock or poultry. This court held that the law imposed no liability for damages to children. In the course of its opinion, reviewing the Maryland cases on the distinction between governmental and proprietary functions the court said, "It is difficult to find a good reason for holding that a municipality (using the word in its broadest sense) is not exercising the police power for the safety of the public when it is maintaining public highways. However, the rule in this State and in other jurisdictions is that, in such case, the municipality is acting in its corporate capacity, and is liable to suit for its negligence. In discussing this question this court in the case of *Mayor and City Council of Baltimore v. State, use of Blueford,* 173 Md. 267, 273, 195 A. 571, 574, said: 'But the two principles, one that a municipal corporation is not liable in a civil action for any default or neglect in the performance of a purely governmental function, and the exception, that it is liable for failure to keep the public highways under its management and control in a reasonably safe condition, are too firmly embedded in our law to be disturbed now.' * * * The case then turns upon the question whether the statute imposed upon the appellee duties which are governmental by nature or whether its duties are those known as corpo-

rate or proprietary. If the appellee is exercising a governmental function, it is not liable. If it is acting under corporate or proprietary powers, it may under some conditions be held responsible. The distinction is, at times, illusory in practice, and not altogether logical in all cases. *McQuillen on Municipal Corporations,* 2nd Ed., Vol. 6, pars. 2795-2798. There is a modern tendency to broaden the liability. In this State, however, the distinction has been adhered to too long for it now to be judicially altered. That can be done only by statute by which it may be abolished altogether, or by which some method of compensation may be provided. The rule has already been relaxed as to employees. Code, 1939, Art. 101, Sec. 46."

No case in this court has directly held that operation of a hospital is a governmental function in respect of which a municipality is not liable for negligence. Perhaps it has been assumed by litigants that a municipality is no more liable than a charitable corporation. In at least two cases in this court, operation of a hospital is mentioned as an illustration of just such a governmental function. *Baltimore v. State, use of Blueford,* 173 Md. 267, 275, 276, 195 A. 571; *Harford County v. Love,* 173 Md. 429, 434, 196 A. 122.

In *Baltimore v. State, use of Blueford, supra,* 173 Md. 276-277, 195 A. 576, it was held that the fact that the city exacted "a nominal fee" for use of a swimming pool in a public park did not make the maintenance of the pool a proprietary function or impose liability for negligence. In *Howard v. South Baltimore General Hospital, supra,* the plaintiff was a paying patient. Indeed, with respect to plaintiff's insistence that the wife was a paying patient, we think, as was said in a case against a charitable corporation fifty years ago, "that such a hospital in its treatment of a rich patient shall be held liable to a greater degree of care than in its treatment of a pauper is not to be tolerated." *Powers v. Massachusetts Homeopathic Hospital,* 1 Cir., 109 Fed. 294, 295. Still more intolerable would be such a distinction with respect

to county or municipal hospitals only and not to hospitals operated by private charitable corporations.

Section 82 of Article 48A of the Code of 1951 (Acts of 1947, ch. 900) provides: "Each policy issued to cover the liability of any charitable institution for negligence or any other tort shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such institution is immune from liability on the ground that it is a charitable institution." The legislative history of this statute is given in *Howard v. South Baltimore General Hospital, supra,* 191 Md. 619-620, 62 A. 2d 575-576. In the absence of statute, the fact that a charitable corporation carries insurance does not make it liable for torts or make the insurer liable on its policy. *Williams' Administratrix v. Church Home for Females,* 223 Ky. 355, 3 S. W. 2d 753, 62 A. L. R. 721. In the instant case the declaration does not mention insurance. At the argument it was admitted that counsel for defendants are counsel for an insurance company, conducting the defense pursuant to a policy of insurance for less than the amount of plaintiff's claim.

Plaintiffs asked that in the event of affirmance of the judgment a new trial be awarded so that they may amend so as to bring into the case the question of insurance and the effect, if any, of the Act of 1947. Code of 1951, Art. 5, sec. 24. Rule 4 of the Rules of the Court of Appeals. Although no request for such leave to amend was made in the lower court, we are disposed to award a new trial because the case may present questions of importance regarding the Act of 1947. In granting a new trial, we venture to suggest some of the questions (without suggesting any of the answers) that may arise under the Act of 1947: Should the Act of 1947 be strictly construed as applicable only to a suit by the insured against the insurer? Or is it, directly or indirectly, applicable in a suit against the insured by a tort claimant, so as to estop the insured (or the insurer as conducting the

insured's defense) to the extent of the collectible insurance? If the insured is both a governmental agency and a charitable corporation, is the insurer estopped only from asserting that the insured is exempt as a charitable institution or also from attaining the same end by asserting that it is exempt as a governmental agency? To raise the question of insurance and the effect of the Act of 1947, may or must the insurance company be made a party defendant? If this cannot be done at law, can it be done in equity?

*Judgment affirmed, with costs, and new trial awarded.*