**Roger B. TUNDER and Juneva B. Tunder, Plaintiffs-Appellants,**

v.

**UNITED STATES of America et al., Defendants-Appellees.**

**No. 74–1838.**

United States Court of Appeals, Tenth Circuit.

Sept. 15, 1975.

David K. Petty, and Tryon, Sweet, Field & Petty, Guymon, Okl., for plaintiffs-appellants.

William R. Burkett, U. S. Atty., for defendants-appellees.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This controversy arises out of a two-car automobile collision in Texas County, Oklahoma, on November 2, 1972. One car was driven by Juneva B. Tunder, age eighteen, who was driving an automobile

belonging to her father, Roger B. Tunder. The second vehicle involved in the collision was driven by one Annie Belle Harkins, who was delivering rural mail for her husband, Floid Harkins, who had a so-called star route contract with the United States Postal Department.

Roger Tunder made claim in the United States District Court for the Western District of Oklahoma for the sum of $1835 based on the damage done his automobile. Juneva Tunder made claim in the same proceeding for $952,546.97 based on the physical injuries which she sustained in the accident. The Tunders named the two Harkins, the United States Postal Service and the United States as defendants. In this regard the Tunders alleged that the Harkins were employees of the United States Postal Service and the United States. Jurisdiction was based on the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*

The United States Postal Service filed a motion to dismiss based on 28 U.S.C. § 2679(a). The United States filed a motion for summary judgment and attached thereto a copy of the star route contract between Floid Harkins and the United States Postal Department. The motion for summary judgment was based on the premise that under the star route contract the Harkins were, as a matter of law, independent contractors and not "employees" of the United States, in which event the United States would not be liable to respond under the Federal Tort Claims Act.

The trial court ordered a response to be filed to both the Postal Service's motion to dismiss and the United States' motion for summary judgment. The Tunders did not respond, as such, to the motion to dismiss, but did file a response to the motion for summary judgment. The trial court granted both motions and dismissed the action insofar as it related to the Postal Service, and entered summary judgment in favor of the United States. The Harkins later moved for a dismissal on the grounds that there was no diversity of citizenship. This motion was granted, without prejudice to the right of the Tunders to refile "the case in an appropriate tribunal."

The Tunders now appeal the entry of summary judgment in favor of the United States. The issue on appeal is whether the record shows that as a matter of law the Harkins were independent contractors, and not employees of the United States. It is agreed that under the Federal Tort Claims Act jurisdiction attaches only if the Harkins were employees of the United States. 28 U.S.C. § 1346(b). It is also apparently agreed that one holding a so-called star route contract with the *old* United States Postal Department was, under the terms of the contract and according to court interpretation, an independent contractor, and not an employee of the United States. The Tunders' basic position in this court is that the contract in question is in reality not with the *old* Postal Department, but with the *new* Postal Service created by the Postal Reorganization Act of 1970. In such circumstance, argue the Tunders, the cases holding that one performing under the provisions of a star route contract is an independent contractor are inapposite. A bit of statutory history is in order.

The Postal Reorganization Act, which was enacted into law on August 12, 1970, repealed or substantially modified former postal laws and created the Postal Service as the successor to the Postal Department. 39 U.S.C. § 101 *et seq.* Prior to the Postal Reorganization Act, the Postal Department could contract with individuals for rural mail delivery under what was known as a star route contract. Such contracts were let after advertisement on a bid basis for a yearly rate of pay. Under the 1970 Act there were to be no more star route contracts, assert the Tunders, and in lieu thereof the Postal Service was authorized to enter into special contracts with any person for rural mail delivery at a negotiated compensation, without advertising or bids. 39 U.S.C. §§ 5005(a)(4) and 5212.

The various sections of the Postal Reorganization Act had various and different effective dates. The sections em-

powering the Postal Service to enter into negotiated contracts for rural mail delivery on a non-bid basis had an effective date of July 1, 1971, the date when the Postal Service formally succeeded the Postal Department.

The contract here involved was entered into by Floid Harkins with the Postal Department on April 26, 1971. The contract was itself labeled as a "star route contract," and Harkins was referred to as a "contractor." The contract was let on a bid basis after advertisement. It was to commence on May 1, 1971, and run thereafter for a period of four years. So, on April 26, 1971, the contract here under consideration was entered into between Harkins and the old Postal Department, and was deemed by the parties thereto as the usual star route contract. Does the fact that on July 1, 1971, the Postal Service succeeded the Postal Department and was thereafter empowered to enter into negotiated contracts for rural mail delivery have any effect on the star route contract previously entered into between Harkins and the Postal Department? We think not.

The Postal Reorganization Act has a saving provision which reads as follows:

"(a) All * * * contracts * * *

(2) which are in effect at the time the United States Postal Service commences operations, shall continue in effect according to their terms until modified, terminated, superseded, set aside, or repealed by the Postal Service * * *, by any court of competent jurisdiction, or by operation of law." Pub.L. No. 91–375, § 5, Aug. 12, 1970, 84 Stat. 774.

For illustrative cases indicating that the Postal Service is bound by contracts lawfully entered into by its predecessor, the United States Postal Department, see *Kennedy Electric Co., Inc. v. United States Postal Service,* 508 F.2d 954 (10th Cir. 1974), and *White v. Bloomberg,* 501 F.2d 1379 (4th Cir. 1974). Based then on the aforementioned saving clause and the rationale of such cases as *Kennedy Electric* and *White,* we conclude the star route contract entered into between Harkins and the Postal Department on April 26, 1971, was unaffected by the transition from the Postal Department to the Postal Service on July 1, 1971.

Although the matter has not previously been considered by this court, other courts have held that one performing under a star route contract with the Postal Department is an independent contractor, and not an employee of the United States, to the end that the United States is not liable for tortious conduct of one delivering rural mail under such contract. Such conclusion was based on an examination of the terms and provisions of the star route contract. *See Fisher v. United States,* 356 F.2d 706 (6th Cir. 1966), *cert. denied,* 385 U.S. 819, 87 S.Ct. 41, 17 L.Ed.2d 57 (1966); *Thomas v. United States,* 204 F.Supp. 896 (D.Vt. 1962); and *Smick v. United States,* 181 F.Supp. 149 (D.Nev.1960). We subscribe to the result and rationale of those cases and conclude that on the record before it the trial court did not err in entering summary judgment for the United States.

Our approach to the instant case obviates any need to here decide whether the holder of a negotiated contract with the *new* Postal Service is in the same position as one having a star route contract with the *old* Postal Department. The instant case involves a typical star route contract entered into with the Postal Department which the Postal Service must now honor.

Judgment affirmed.